DANIEL J. SINCLAIR, vs. ADDISON J. COMSTOCK, ET. AL.

When the proprietors of a village or town have dedicated lots for streets or for a public square and have sold lots with reference to such plan, they cannot resume and exercise acts of ownership over the land thus dedicated, which will deprive their grantees of any privileges which they might derive from having such streets or squares left open. But in every such case the dedication for the purpose claimed, must be made clearly apparent.

Where a lot in the village of Adrian was granted to the county for the purpose of erecting a court house and jail thereon, and the county erected a court house and jail on another and different lot in the same village; it was held that this was sufficient evidence of the refusal of the county to accept the donation according to the condition of the grant, and that it must in fact revert to the donor; and that persons purchasing lots adjoining had no right to insist that this lot should be kept open as a public square or common.

Motion to dissolve injunction on bill and answer.

The bill of complaint alleges that the plan or plat of the village of Adrian was laid out in 1827-8 by Addison J. Comstock, one of the defendants, who was the owner of the lands constituting the same.    The plat of said village was duly recorded in the Register's office as required by the statute.    On the plat lot number 14, was given by the proprietor to the county of Lenawee, for a court house and jail.    At the time the village of Adrian was laid out, the county seat of said county was at Tecumseh ; and it was the intention of the proprietor that lot 14 should be used as well for a public square as for a court house or jail.    That it had been so used from the time said village was laid out with the knowledge and assent of the defendant.

The bill states that the defendant sold lot 49, adjoining lot 14, and described the same as bounded on the north by the public square ;— that lot 49 had been subdivided and sold, and the purchasers had erected on the same valuable buildings fronting on the *public square* as described in the deed of lot 49, with the full belief that lot 14 would always remain a public square for the common benefit of the inhabitants of said village.    The bill alleges the defendant had full knowledge of the expectation of those who erected the buildings fronting lot 14, and made no objection thereto.

The bill also alleges that the defendants with others made additions to said village plat, and procured to be published a map of the said

village, upon which lot number 14 was designated as a *public square*, and another lot was designated as the site of the court house and jail, and called Court House Square.

That the complainant believing lot 14 would always remain open, purchased one of the subdivisions of lot 49, fronting on the public square or lot 14.

By an act of the legislature approved 21 March 1836, it was declared the county seat should be established at Adrian, from and after the first Monday of November, 1838. On the 6th of June, 1837, the defendant, Comstock, deeded to the Supervisors of the county of Lenawee, a piece of land at or near the village for a court house and jail. On the 5th of June, 1837, the defendant, Comstock deeded lot 14 to George Crane, his heirs and assigns in fee simple without consideration. Immediately after this conveyance Crane caused public notice to be given, that he would sell at public auction lot 14, the same having been subdivided into ten lots. The complainant and others also who had purchased parts of lot 49, as subdivided, caused public notice to be given before and at the time of the selling of the subdivisions of lot 14, that Crane had no right to sell and convey the same, as it was reserved for a public square, and private buildings could not be erected thereon, and that his right to the same would be litigated. Lot 14 as subdivided was sold however, and the defendants became the purchasers. The bill charges that the defendants are about to erect buildings on lot 14, as subdivided, by which the complainant will be greatly injured, &c.

The answer admits the village of Adrian was laid out as stated, and that lot 14 is on the plat reserved to the county of Lenawee for a court house and jail. At the time of the laying out of the village of Adrian the county seat was at Tecumseh, and it was understood and *declared* that lot 14, was only to be used for a court house and jail by the county, and for no other purpose whatever; and the statement was repeatedly made to the citizens of Adrian, and the defendant expected if the same was not used for the purposes for which it was reserved it would revert to him. Answer admits that on the first of March, 1828, defendant Comstock acknowledged the plat of the village of Adrian, and under his hand and seal granted the streets and lot 14 for the purposes named and expressed on the map of the plat

2nd Circuit of said village, which was duly recorded. Lot 14 has been open from
Sinclair. that time until the present with the knowlege of the defendant, but
*vs.*
Comstock. without any express assent ; Admits there was a bond or agreement
as set forth in the bill to sell lot 47, in which it was described as bounded
on the north by the public square, and on December 28, 1835, in ac-
cordance with the provisions of the bond, a deed was made bounding
it in the same manner.  The subdivision of lot 49 is admit-
ted, and the sales to the complainants and others, and the erection of
buildings; but it is denied that the complainant had any assurance that
lot 14 would remain open, nor had he any reason to believe the defen-
dants would ever assent to it remaining open and unoccupied, for Com-
stock had asserted and given notice before and at the time of the sale
of lot 49, and before and at the time of the erection of the buildings
thereon, that he should claim lot 14 if the county did not use it for
the purpose specified in the grant to the county.  The answer admits
the making of an addition to the village, the publishing a map, as
alleged in the bill upon which lot 14 is designated as a public square,
and another lot is called "Court House square," but denies that Com-
stock, the defendant ever assented to the map's being made, and
avers that it does not correspond with the oiginal on record ; admits
the change of the county seat from Tecumseh to Adrian in Novem-
ber, 1838 ; admits that defendant did convey to the county of Lena-
wee a lot for a court house and jail in June, 1837 ; admits that de-
fendant, Comstock, on June 5, 1837, conveyed lot 14 to Crane ; ad-
mits that by act of the Legislature the Board of Supervisors had the
authority to fix the county seat or court house on such lot as might be
conveyed to them, and that they did so fix the same on a lot between
Front and Toledo streets, and the defendant conveyed the same to the
Supervisors on the 7th of March, 1837, and that it was understood by
the Board of Supervisors as well as defendant, Comstock, that lot 14
reverted to the defendant, Comstock ; but he agreed at that time to
give lot 14 or the avails thereof to the Board of Supervisors for
the purpose of erecting the county buildings ; and George Crane was
agreed upon as commissioner to receive the title and sell and dispose
of the same for the benefit of the county.  The deed was made to
Crane on the day mentioned in the bill,  and Crane gave back an in-
strument declaring he held the same in trust for the county to be dis-

posed of, and the avails used in erecting county buildings; admits that

Crane gave no other consideration than as above mentioned, and that he sold the same as trustee for the county duly appointed, at public auction as alleged in the bill ; admits the complainant gave notice that lot 14 was a public square, &c., as mentioned in bill of complaint ; admits defendants are about to erect buildings on lot 14, as subdivided, but denies that it will materially obstruct the view of the complainant from lot 49, as there is a street 30 feet in width, running on the line of lot 14 and betweenthat and lot 49. The defendants pray to have the same advantage as though they had demurred to bill of complainant, &c., &c.,

A. FELCH, in support of the motion.

The original grant of the lot in question (No. 14 in the village of Adrian) was a conditional one, being given for a court house and jail. The county buildings of Lenawee county were established by law at the time of laying out the village of Adrian at Tecumseh.

Whether a condition be *precedent* or *subsequent* will depend on the intention of the parties creating the estate. *Findley* vs. *King*, 3 *Pet. R.* 346.

The county seat could not be changed without an act of the Legislature, nor could the lot in question be used for the purpose designated without such an act. The intention of the parties must have been therefore to set apart this lot for the purpose of putting upon it a court house and jail, if the Legislature should pass such an act. The building of a court house and jail, or at least an acceptance of the grant for that purpose, was necessary before the grant took effect and and until that was done, both the fee and the possession remained in Comstock.

In the case of the First Parish, in *Sutton* vs. *Cole*, 3 *Pick.* 332, land given for the use of schools, it was decided could not be recovered by the donors until they had accepted the grant or made an entry under it.

In *Hayden* vs. *Inh. of Stoughton* 5 *Pick. R.* 528, there was an acceptance of the grant by vote of the defendants.

The act of the legislature passed in 1836, establishing the seat of justice at Adrian from and after November 1, 1838, gave to the Su-

2nd Circuit. pervisors the right to put the county buildings on this lot, or such oth-
Sinclair. er lands as might be given for that purpose, in the village of Adrian.
vs.
Comstock They were subsequently placed by them on another lot, which was
decded for that purpose by said Comstock March 7, 1837.  The ob-
ject for which the lot in question was given, was therefore never ac-
complished ; the lot was never accepted nor used for a court house and
jail ; on the contrary the act of the Board of Supervisors was an ex-
press rejection of the lot, and an acceptance of another from the same
donor.

A condition precedent must take place before the estate can vest or
be enlarged, and until the condition be performed the estate cannot be
claimed to vest.   2 *Black Com.* 154.

The condition  must be literally performed,  and even a court of
chancery will not vest an estate when  by reason of  a condition pre-
cedent it will not vest in law.   *Popham vs. Bompfield*,  1,  *Ves.* 83, 4
*Kent's Com.*, 125, *Vanhorn vs. Dorrena* 2 *Dall. R.* 317, *Shep. Touch.*
450.

II. If it be conceded that the grant took effect immediately on recor-
ding the map of the village, the occupation of the lot for a court house
and jail was a condition subsequent,  and the location of  the county
buildings on another lot was a relinquishment of all right under the
grants, and the premises reverted to the donor.

On condition broken the whole property reverts.  *Shep. Touch* 120,
*Gray vs. Blanchard* 8 *Pick. R.*  284.

Lands given on condition that the public buildings of the parish
be erected thereon revert to the donor, if the seat of Justice of the
Parish be removed by an act of the Legislature.   4 *Kent's Com.*,
126.

So a neglect to comply with the condition  to build a school house
for twenty years operates as a forfeiture of a grant.   *Hayden* vs.
*Inh, of Stoughton*, 5 *Pick. R.* 228, *Lessee of Sperry* vs. *Pond &c*,
5 *Ohio R.* 387 ; *Heirs of Sullivant* vs. *Commissioners of Franklin
Co.*, 3 *Ohio R.*, 89.

This too is the express provision of the statute of the state under
which the grant was made.  *Statute of* 1833, *page* 135.

III. The part of the lot on the  south  side  of  the  premises being

deeded in December, 1835, to C. Hoag, and described as bounded on the north by the public square, gave no right as to lot No. 14. It was a mere description of the lot conveyed. The sale was made of a village lot by its number, and in reference to the village plat on record. The record showed the true character of the grant of lot No. 14, and the term "public square" could have been understood only as applying to lot No. 14, as there given and not otherwise. The record showed that the only interest which the public could have in it was to occupy it for a court house and jail.

· But the record is notice to the world of the character of the grant. *Price & al. vs. Methodist Church, Ohio, R.*, 515.

The term way or highway has in law a fixed definite signification, always implying certain legal rights. Not so with the term public square. It has no fixed legal meaning. It implies no covenant and works no estoppel. It is like any other term description of limits, and is to be taken in its general acceptation. This by no means implies that it should be what the complainants claims, in open, unenclosed space. And in this case the answer shows, that at the time of the conveyance to Hoag, and subsequently, it was understood and declared to mean that the lot was intended for public use for a court house and jail and not for a street or common.

Besides, the lot conveyed to Hoag neither had nor required these premises to give access to it. It had its front or main street, and has been subdivided since the purchase was made of Comstock.

IV. If the lot did not revert to Comstock, but the fee is still in the county under the grant, the complainant is in no better position and must fail in the suit. By the grant of a lot for a court house and jail, no right is given to the owners of adjoining lots to require it to be kept unfenced, or without buildings or open as a street or highway Indeed this would defeat the very object of the grant.

In the case of the Cambridge Common, it was decided that enclosing it with a fence, excluding travel by horses, carriages, teams, planting trees, &c., was not inconsistent with the grant ; but the land being appropriated to a specific public use, a highway over it would be inconsistent with the grant. 16 *Pick. R.* 87.

Under the grant for a court house and jail there is a full right not only to enclose the premises and to erect thereon a court house and

*2nd Circuit.*

*Sinclair.*
*vs.*
*Comstock.*

jail, but barns, stables and all necessary outbuildings for the use of the jailor and others necessarily having charge of the public buildings. *Jackson* vs. *Pike,* 9 *Cow. R.* 69.

And an occupying of the premises in the ordinary mode of occupying village lots is not inconsistent with the grant. *Id.*

V. So far as even the imaginary rights of the complainant can go the lots on the south side of the premises in question are abundantly provided for, in the location gratuitously by the defendants of a street thrty feet wide adjoining lot No. 49.

VI. Here was no *dedication* of the land to the public for the purposes claimed in the bill. Such dedication supposes an act to be done by the owner in fee ; this act must be unequivocal, and evidence an intention to grant the land for the purposes claimed where the original owner continues to exercise any acts of ownership over the premises, or denies the right of the public to it, or claims rights in himself inconsistent with such dedication, it prevents a dedication. Even a disability to exercise acts of ownership over it will prevent it. 5 *Taunt.* 137 ; 10 *Serg. & Raw.* 412 ; *Wood* vs. *Veal,* 5 *Barn. & Ald.* 454 ; *Harper* vs. *Charlesworth,* 1 *Barns. & Cres.* 674 ; *Price & al.* vs. *Methodist Church,* 4 *Ohio, R* 15.

The facts disclosed by the bill and answer forbid the idea of a dedication of the lot in question, to be kept open without fence and without buildings. They show on the contrary that it was set apart for a purpose totally different, and every act of the donor in reference to the lot has been in accordance with the grant last mentioned. The answer shows that before the deeding of the lot owned by complainant at the time of deeding it, and subsequently to that time, he denied the dedication of the lot for the purposes demanded in the bill, and claimed full and perfect right to the same, subject only to the interest acquired by the public for the uses designated in the plat of the village of Adrian.

BAKER, HARRIS & MILLARD, contra.

The estate conveyed to the county, is not properly a trust estate. No trustee and *cestui que trust.* The title is absolute, except that they take on condition of devoting it only to a particular use ; and equity would restrain from any other use. It conveys *the fee in presenti,* although the county seat was not then established at Adrian

and there was no assurance that it ever would be. Suppose it never had been, would the land have reverted? and if so, when? And suppose it had been removed from Tecumseh to Palmyra, would the land have reverted? How does it appear but that the county seat may still at some time be established on this lot. *Laws of Michigan* 1833, *page* 531.

Comstock has dedicated the land to the public, and given reason to expect that it would always remain a public square.

1. By leaving it open and allowing it to be so used from the time of laying out the village.

2. By designating it as the public square, in solemn instruments.

3. By having maps lithographed and circulated, with this lot marked as a public square, and another as a court house square, after the county seat had been removed. Though the answer states that Finch (Comstock, partner in the concern) procured the maps, it does not deny a knowledge or participation on the part of Comstock, nor that he circulated them.

These are unequivocal acts which amount to a grant to the public, independant of the consequence on the original plat, and from which the individuals concerned were fully justified in concluding that it was always to be a public square.

The location of the court house and jail upon another lot instead of this, having been made by Comstock's own consent and procurement, he cannot take advantage of it as a forfeiture.

Comstock having conveyed to Hoag, (under whom complainant claims) and described this lot as the " public square, " and bounded the lot conveyed, by the " public square, " is estopped from denying that it is such.

The act to provide for the recording of town plats, &c., approved April 12, 1827, made it necessary for Comstock to make and record a plat, bounding and specifying all the streets and public grounds, and what the lands so described were intended for, and the acknowledgment and recording vested in the fee of such land in the county; and the statute expressly recognised the title as in the county, by the provisions, that such plat should not afterwards be altered, unless satisfactory proof was adduced, that *all persons owning any lot or part*

*thereof had agreed to such alteration;* by this means protecting acknowledged rights of persons, who had purchased with a view to the advantages of the public ground so set apart ; and not subject to any condition either subsequent or precedent.

The provisions in section four of the act to amend an act to provide for establishing seats of Justice, on page 534 of Laws of Michigan, (1833) do not apply to this case; as this conveyance from Comstock was made under another and entirely different law, relating to towns generally, and not to county seats, and under which the donor could have no grounds for claiming a reversion ; und farther, if it did ever apply to cases like the one now under consideration, it can have no influence here, as it was in 1835 repealed, long prior to anything done herein.

THE CHANCELLOR.—There is no doubt that when the proprietors of a village or town have dedicated lots for streets or for a public square, and have sold lots with reference to such plan, they cannot resume and exercise rights of ownership over them, which will deprive their grantees of any privilege which they might derive from having such streets or sqares left open.

But in every such case the dedication for the purpose claimed must be made clearly apparent.  The lot in question was granted to the county of Lenawee for the purpose of a site for a court house and jail.  The original dedication shows that such was the special purpose to which it was dedicated ; and the answer of Comstock, the original proprietor shows that it was granted for this, and no other purpose; and states that it was always so declared by him.

The proper authorities of the county of Lenawee designated another, and a different lot for this purpose, and have actually erected the court house and jail, on another and different lot in the village of Adrian.

Comstock, the original proprietor having transferred this lot originally dedicated for a court house and jail, the present complainant claims that it shall be kept open and uninclosed.  Comstock, in granting the adjoining lot to the grantor of the complainant describes the adjoining lot as bounded on the public square.

If this lot 14 had been left open as a common, and not designated upon the original plat as having been dedicated for that particular pur-

pose, I should have no doubt that this would have been held as suffi-

cient evidence that this lot had been dedicated for the general use of the inhabitants of the village of Adrian.

But when it appears by the public records that it was dedicated to a particular purpose, it would seem that this phraseology must have been used merely by way of description and was not intended to, and cannot change the character of the grant.

In order to sustain this injunction it is necessary to require that a lot granted for one purpose, and to be used in a particular way, shall in fact be devoted to another purpose, which requires it to be used in a different manner.

The complainant claims that it shall be kept open as a common, or public square. The record shows that the only interest the public had in it, was to occupy it as the site for a court house and jail ; and the record must be considered as notice to the world of the character of the grant. By a grant of a lot for a court house and jail, no right accrues to the owners of adjoining lots, that it shall be kept open and unenclosed. On the contrary, it is to be supposed that if occupied for these purposes that it will almost necessarily be enclosed, and occupied by all such necessary outbuildidgs as may be appendant, such as a jail yard, the usual stable and necessary outbuildings for the use of the gaoler and his family.

The act of the commissioners establishing these buildings elsewhere, seems to me a sufficient evidence of the refusal of the county to accept this donation according to the condition of the grant, and that it must in fact revert to the donor.

Whether this shall be the effect or not, this complainant has no right to insist that it shall be kept open as a public square or common, when from the terms of the grant it is apparent that such was not the intention of the donor ; But on the contrary, from the object of the grant, if accepted and used for the purpose intended, it must necessarily have been occupied and enclosed,

Injunction dissolved.