DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

STATE OF NEW-JERSEY,

AT JANUARY TERM, 1850

---

### DEMAREST ET AL. v. DEN EX DEM. HOPPER ET AL.

When lands are devised to any person for life, and at his death to go to his heirs, the children of the tenant for life take immediately a *vested* remainder in fee, by virtue of the first section of the act further regulating the descent of real estates. *Rev. Laws* 774 (*a*).

This was an action of ejectment brought in the Supreme Court by John Den, on the demise of Maria Louisa Hopper, Eliza Ann Hopper, Charity Euphemia Hopper, Henry Lewis Hopper, Catharine Jane Hopper, Emily Hopper, Lewis Hopper, John Bush, and Peter P. Wortendike and Rachael his wife, against Garret J. Demarest, Daniel D. Blauvelt, James Holdrum, and Henry A. Terhune, in trespass and ejectment for lands in Bergen county.

It was tried before the Chief Justice at the Bergen Circuit, in February, 1847, when a special verdict was found under the direction of the court.

John Bush and Rachael the wife of Peter P. Wortendike, two of the lessors of the plaintiff, were found to be lawful heirs of

(*a*) Re-enacted, *Rev. Stat.* 340, § 10.

Catharine Salyer, now deceased, the daughter of Johannes Perry. A general verdict was found that the defendants were guilty of the trespass and ejectment complained of, and the damages of the plaintiffs were assessed at six cents, subject to the opinion of the court upon the following case, and the facts so specially found by the said verdict:

Johannes Perry, of Orangetown, Rockland county, New York, by his last will, dated May 29, A. D. 1823, and duly signed and attested to pass real estate in New Jersey, devised, among other things, as follows: " I give unto my daughter Catharine, for and during her life, the remainder of my real estate; after her death, I will and require the same shall be equally divided among her heirs, and be unto them, their heirs and assigns for ever."

That the said Johannes Perry died in about the year 1832, and was, at the time of his death and at the date of said will, seized in fee of the premises in question, which, with a lot of wood land, containing about $18\frac{1}{2}$ acres, adjoining the said premises, and some lands in Rockland county, constitute the remainder of his real estate, and were not included in any specific devise in his will.

That said testator, at the date of said will, had three children, Margaret, Mary, and Catharine; that Catharine was, before the date of said will, lawfully married to Michael Salyer, who is still living, and from whom she never was divorced; that after said marriage, and during the cohabitation of said Michael Salyer and Catharine his wife, she had one child, Maria, afterwards the wife of Lewis Hopper; that, after the birth of said Maria, Michael Salyer and his wife Catharine separated and lived apart, under written articles of separation; that during said separation the said Catharine was formally married to Peter Bush, by the Reverend Stephen Goetchius, a settled and ordained minister of the gospel, settled at the Reformed Dutch Church at Pascack, in the county of Bergen; and that after said ceremony of marriage they cohabited as man and wife, and that during said cohabitation John P. Bush and Rachael Wortendike, two of the lessors of the plaintiff, were born of said Catharine. John was born about two years after said

marriage by S. Goetchius, and before the date of the will; Rachael was born a few years after John, and after the date of said will, but in the lifetime of Johannes Perry.

That Maria, the daughter of Catharine Salyer, was married to Lewis Hopper in 1824, and died May 22, 1846, leaving six children, born during said marriage, to wit: Maria Louisa, aged 18 years; Eliza Ann, aged 16; Charity Euphemia aged 14; Henry Lewis, aged 11; Catharine Jane, aged 8; and Emily aged 4 years, and leaving no other descendants.

That Catharine, the daughter of Johannes Perry, died in September, A. D. 1845, before her daughter Maria, and leaving no other descendants than said Maria, John, and Rachael; that said Catharine and Peter Bush, after said marriage ceremony before S. Goetchius, cohabited as man and wife until her death, and that her children, John and Rachael, were always called by the name of Bush.

That Lewis Hopper and Maria his wife, by deed, duly acknowledged, dated April 13, 1832, recorded May 28, 1832, reciting a consideration of $500, witnessed that they had granted, bargained, sold, aliened, remised, released, conveyed, and confirmed, unto Peter Bush and his heirs and assigns, all the right, title, and interest which they then had, or thereafter might have by virtue of the will of Johannes Perry, in the premises in question, and on seventeen acres in Rockland county, without any covenants.

That Peter Bush and Catharine, called his wife, by deed, duly acknowledged, dated April 13, 1832, recorded October 23, 1833, reciting a consideration of $300, witnessed that they had granted, bargained, sold, aliened, remised, released, conveyed, and confirmed, unto Lewis Hopper and Maria his wife, the wood lot of 18½ acres adjoining the premises in question, and part of the lands devised by Johannes Perry to his daughter Catharine, for her life, without any covenants.

That Peter Bush, by bond, dated April 13, 1832, became bound to Lewis Hopper in the sum of $1000, with a condition reciting, that whereas John Bush and Rachael Bush, heirs of Catharine aforesaid, were minors, and incapable to transfer real estate, that if said John Bush and Rachael Bush, when of age,

should convey their interest in said 18½ acre wood lot, or if said Peter Bush should pay said Lewis, his heirs or assigns, all costs or damages which he may sustain by reason of their not so doing, that bond to be void.

That said bond and said last mentioned deed were the true and only consideration of the release executed by Lewis Hopper and wife to Peter Bush ; that Peter Bush and the said Catharine, before that, and at the opening and reading of the will of Johannes Perry, had expressed themselves much dissatisfied with the limitations on Catharine's share, and he threatened that if some arrangement was not made he would sweep all the wood off the same; that, after this, negotiations began, which ended in the above conveyances.

That Peter Bush, at and before the date of the release to him, was in possession of the premises, and that Lewis Hopper entered upon the 18½ acre lot, and has sold the same to divers persons, by deeds with full covenants of warranty and seizin, for the sum of $850, in all.

That Peter Bush and Catharine, called his wife, by deed, duly acknowledged, dated October 23, 1833, and never recorded, reciting a consideration of $1982, witnessed that they bargained, sold, and conveyed to the defendants, Daniel D. Blauvelt and Garret J. Demarest, 30.72 acres, part of the premises in question, in fee simple, with full covenants of title.

That Peter Bush, at the date of said last mentioned deed, executed to said Garret J. Demarest and David D. Blauvelt his bond, with a condition reciting that said John Bush and Rachael Bush, as heirs of Catharine, were interested in the said 38.72 acres by virtue of said will, and that said bond should be void on their releasing to said Garret and Daniel, when they came of full age.

That Peter Bush and Catharine, called his wife, by deed, dated October 23, 1833, duly acknowledged, but never recorded, conveyed, by bargain and sale, with full covenants, 13.76 acres, the residue of the premises in question, to James Holdrum, for the consideration of $602.27.

That Peter Bush, at the date of the said deed, gave to James Holdrum his penal bond, with like recital and condition as is

contained in the bond above stated, to Garret J. Demarest and Daniel D. Blauvelt.

That John P. Bush, when of age, executed a deed to Garret J. Demarest and Daniel D. Blauvelt, dated December 31, 1842, duly acknowledged, but never recorded, reciting a consideration of one dollar, whereby he witnessed that he had granted, bargained, sold, remised, released, and for ever quit-claimed to said Garret and Daniel, in fee, the lands so conveyed to them by Peter Bush, without any covenant of any kind, and executed a like release for like consideration, with like words of conveyance, of said date, and also without any covenant of any kind, to James Holdrum, for the lands so conveyed him by Peter Bush.

The question for the opinion of the court is, whether, on the facts above stated and the facts specially found by the jury, as above stated, the lessors of the plaintiff, or any of them, have any title to the premises in question, or any part thereof; and if the court shall be of opinion that the lessors of the plaintiff, or any of them, have title to said premises, or any part thereof, then the verdict is to be entered for the plaintiff as aforesaid, or for such part of the premises as the lessors of the plaintiff, or any of them, have title to; but if the court should be of opinion that the lessors of the plaintiff, or any of them, have not title to the premises in question, or any part thereof, then a verdict to be entered for the defendants.

And either party is to be at liberty, within ninety days after the judgment of the Supreme Court shall be rendered on this case stated, to turn this special case into a special verdict, and to enter the same on the record, by giving notice of such election within said ninety days to the opposite party, or his attorney, in order that a writ of error may be brought thereon.

The Supreme Court upon this case decided that the lessors of the plaintiff were entitled to recover two undivided third parts of the premises in question, and judgment was so ordered accordingly.

After judgment was thus rendered, the defendants below brought their writ of error to reverse the said judgment, and

within the time specified turned the special case into a special verdict.

The plaintiffs in error assigned the following causes in error:

*First.* Because the Supreme Court decided that the devise in the will of Johannes Perry to his daughter Catharine during her life, of the remainder of his real estate, and after her death to her heirs, and to be unto them, their heirs and assigns for ever, gave to the children of the devisee for life only a contingent interest in the estate devised, and that such children on the testator's death took a contingent, and not a vested interest in the remainder.

*Second.* Because the said court decided that the deed from Lewis Hopper and Maria his wife to Peter Bush and his heirs, mentioned in the state of the case, passed no title whatever in the said lands.

*Third.* Because the said court decided, that Lewis Hopper was not tenant by the curtsey of his wife Maria of the premises in question.

*Fourth.* Because the said court decided, that the lessors of the plaintiff, being the husband and children of Maria Hopper, were not estopped, either technically so or in any way barred in law, from setting up a title adverse to the deed of the said Lewis Hopper and the said Maria his wife, herein before mentioned, or from averring that no title passed by that grant.

*Fifth.* Because the said court decided, that Maria Hopper was never in either the actual or constructive possession of the premises in question, and had only a bare right to possess them.

*Sixth.* Because the said court ordered judgment for two undivided third parts of the premises in favor of the plaintiff, when judgment should have been ordered for the defendants.

*W. Pennington,* for plaintiffs in error.

The title of the defendants, as well as of the lessors of the plaintiff, is deduced from the will of Johannes Perry, who died in 1832, having devised the residue of his estate, which comprised the premises in question, to his daughter Catharine for life, and after her death to heirs, &c. Catharine had three

children, Maria, undoubtedly a lawful child, and John and Rachael, the two last born after a second marriage, entered into according to the peculiar notions of Dominie Goetchius. But the jury have found that they are the lawful heirs of Catharine Salyer, and they are to be considered such in this discussion. The defendants claim title to two-thirds of the premises in question. They do not claim title from Rachael, who has not released since she came of age. We suppose that here the sole controversy will be in regard to the share of Maria Hopper, conveyed by her and her husband before the death of her mother, Catharine. [The counsel of the defendants here stated that they should also claim the share of John P. Bush and judgment for the entire premises.]

1. What is the effect of the devise to Catharine? At common law, under the rule in *Shelley's case,* the devise would be in fee. The statute of 1820 (*Rev. Stat.* 340, § 10) comes in, and its operation is to turn it into a devise to Catharine for life, with remainder to her children in fee. We contend that remainder is a *vested interest,* a vested remainder in the three children, as tenants in common. When Hopper and wife and John P. Bush made their several conveyances, they had a vested interest, which they could convey, and not a mere contingent interest, which could not be conveyed, and could have no operation except by estoppel.

The courts incline to consider remainders as vested, rather than contingent; and the court below had no difficulty on the first clause of the statute, that on the death of tenant for life the estate should go to, and vest in the children of such devisee. The difficulty was upon the second clause, but which must yield to the policy of the law and obvious intent of the statute. The court will labor to vest it, if possible.

Maria did not die before her mother, and the case provided for in the subsequent clause never occurred; her children claim not by force of the statute, but as heirs. They claim not under the will, but under the mother, and she, with her husband, has conveyed the premises in fee. She took a vested remainder in fee, which would open in favor of afterborn children. She was entitled to convey, and the purchaser took

a fee subject to be divested, had she died before the death of the mother. *Den* v. *Allaire, Spenc.* 6. See also 4 *John.* 61; 2 *B. C.* 169; 5 *Mass.* 535; 1 *Serg. & R.* 378; *Ives* v. *Legge*, 1 *Fearne C. T.* 319, *note;* 2 *Har.* 281; 4 *Kent* 201. If vested remainder, there is an end of the cause.

2. But suppose the remainder to be contingent, and no title passed by the deed of Maria Hopper and her husband or of John P. Bush, yet the estate vested on the death of the mother, and enures by estoppel to the benefit of the purchaser. It may be said that there is no recital or covenant of title, and therefore no technical estoppel. I admit it, but 'it stands on the broader ground, that courts will not permit persons to claim in opposition to their own deed. The deed of a married woman, executed according to the form prescribed by the statute, is effectual to pass her title, and the principle will equally apply to her. 1 *John. Cas.* 81; 12 *John.* 201; 13 *Ib.* 316; 14 *Ib.* 193; 3 *Ib.* 331; 5 *Halst.* 102; 2 *Gr.* 1; *Cowp.* 600; 3 *Wash. C. C. R.* 549.

3. One count is on the demise of Lewis Hopper, as tenant by the curtesy. If his wife was ever so seized as to entitle him to a life estate, we have his deed. '

*Zabriskie* and *A. S. Pennington*, for defendants in error.

The court below were mistaken in regard to the deed of John P. Bush. His release was before, and not, as supposed by the court, after the death of his mother, Catharine Salyer. We shall therefore insist, that if the remainder over is held contingent, that we are entitled to judgment for the entire premises. The record was one brought into this court by the writ of error, and such judgment may here be given as the court below should have given.

1. Maria Hopper and John P. Bush, at the time of executing the conveyances by them, had not such estate as they could convey by release or bargain and sale. No estate vested in them during the life of their mother. There was not even a contingent remainder, but merely a possibility or expectancy, such as a child may have during the lifetime of a parent.

The word " heirs," in the will, is a word of limitation, and

Demarest et al. v. Hopper et al.

not of purchase or designation, unless made so by the plain language of the will. 4 *Kent* 537, *note ;* 2 *Jac. & Walk.* 65, 189; 1 *Pow. Dev.* 301, 304, 311. At common law, then, there is no dispute but that, under the rule in *Shelley's case*, Catharine would have taken a fee.

But the words come within our statute, (*Rev. L.* 774, § 1; *Rev. Stat.* 340, § 10,) and the construction of that statute must govern this devise. The statute does not provide for the case where no descendants. Its object is not to abolish the rule in *Shelley's case*, but, when there are descendants, to carry out the will of the testator, despite the rule. The rule seems not to be abolished, but is averted when there is issue. If neither child nor grandchild the rule operates, and the estate descends to the heirs of the first taker. The vesting of the freehold was not the mischief, it was the contravention of the will of the donor by the first taker. The statute is one to regulate descents, not to construe wills, and should be construed as near the common law as will attain the object of the statute.

No *estate*, upon this construction, vests during the life of the ancestor, but there is only a possibility or expectancy as heir.

But, if this construction cannot be adopted, still the remainder to the children is contingent, not vested. It is contingent to vest in case the child survive the parent, if not, then go to the grandchild, who is to take not by descent from the parent, but by purchase, according to the disposition in the will. The person to take is uncertain, which is the characteristic of one class of contingent remainders. This construction is conformable to the view taken in *Den* v. *Provost* (4 *John.* 65), where, under such provision, it was admitted that the remainder would be contingent, *viz.* that the estate should go to children living at the time of the death of the mother, and if any deceased, then to the issue of such deceased child. So in *Pelletreau* v. *Jackson*, 11 *Wend.* 121–2.

In New York there is a statute very similar to ours, in which, however, it is declared in express terms, that the " heirs," on the termination of the life estate, shall take as purchasers ; and this is said by Kent to be a contingent remainder. See 4 *Kent* 511, *note* (*5th edition*).

2. If contingent, then no title passed by the conveyance, and none can be set up, unless by way of estoppel, of which principle no question can be made.

No estate passes by deed of release, bargain and sale, or other deed taking effect under the statute of uses, except what was vested in the grantor at the time of the conveyance. Nor will the grantor be estopped from setting up any after acquired estate, unless such deed contains an express recital of title or covenants of warranty. The cases can have proceeded only on the ground that there was no estoppel, either technical or equitable. *Litt.* § 446; *Co. Lit.* 265 *a & b; Wyvil's case, Hob.* 45; *Whitfield* v. *Fausset,* 1 *Ves. Sen.* 387; *Seymour's case,* 10 *Co.* 95; *Adm. arg. in Doe* v. *Whitehead,* 2 *Burr.* 704; *Doe & Lumley* v. *Scarborough,* 3 *Ad. & Ell.* 2; *Right* v. *Bucknell,* 2 *B. & Adol.* 278; *Bensley* v. *Burdon,* 2 *Sim. & Stuart* 519; *McCracken* v. *Wright,* 14 *John.* 193; *Jackson* v. *Vanderheyden,* 17 *Ib.* 167; *Jackson* v. *Hubble,* 1 *Cow.* 613; *Jackson* v. *Winslow,* 9 *Ib.* 13; *Jackson* v. *Bradford,* 4 *Wend.* 622; *Pelletreau* v. *Jackson,* 11 *Ib.* 110; *Jackson* v. *Waldron,* 13 *Ib.* 178; *Blanchard* v. *Brooks,* 12 *Pick.* 47; *Kinsman* v. *Loomis,* 11 *Ohio* 475; *Allen* v. *Sayward,* 5 *Greenl.* 227; 2 *Smith's L. Cas.* by *Hare & Wallace,* 454, *et seq.* (*Law. Lib. ed.* 1844).

The words "grant, demise, and release," in a conveyance in fee, do not imply a warranty, whatever might be the case in a lease for years. *Frost* v. *Raymond,* 2 *Caines* 188; *Grannis* v. *Clark,* 8 *Cow.* 36; *Co. Lit.* 384, *a,* and note.

The case of mortgage stands on special grounds. *Den* v. *Gardner, Spenc.* 556, 560, and authorities there cited.

The doctrine is well settled, and most of the cases that seem to conflict are consistent, so far as the decision goes, though they contain *dicta* too broadly expressed. *Jackson* v. *Murray* (12 *John.* 202), the only case in which the point seems decided in New York, and the *dicta* of Kent, J., in *Jackson* v. *Bull,* (1 *John. Cas.* 81), have been overruled by the subsequent cases in the same state, already cited. See also the *dictum,* as stated in 4 *Kent* 260 *and note* (*5th edition*).

*Den* v. *Vanness,* 5 *Halst.* 102, was a mortgage case, and

the *dicta* to be found there were unnecessary to the decision. The case of *Lessee of Cooper* v. *Galbraith* (3 *Wash.* 546), was that of ejectment by purchaser at sheriff's sale against the defendant in execution, who must surrender the possession ; this point is also decided in *Den* v. *Winans*, 2 *Gr.* 1. There are *dicta*, however, in these three cases which it is submitted are not law.

In *Den* v. *Allaire*, the party who conveyed had a plain vested estate in fee simple by executory devise, subject only to be defeated by subsequent contingency. Had the court held the party in remainder could have conveyed before the contingency happened on which the subsequent estate was to vest, that case might then have had some application to this argument.

3. But clearly a married woman is not bound by warranty or estopped by her deed of bargain and sale ; and this applies to conveyance by Maria Hopper. 17 *John.* 167 ; 6 *Wend.* 1; 2 *Kent* 168

Again, the heirs of Maria Hopper do not claim by descent from her, but *per formam doni.* She was never actually seized, and therefore her husband never became tenant by curtesy.

*Vroom*, in reply.

Under this will and the act of 1820 (*Rev. L.* 774), which is supposed to abolish the rule in *Shelley's case*, Catharine took simply an estate for life, and was deprived of the power to alienate from her children. She left three children, and the residue of the estate was in them. The construction cannot be adopted, which would leave part of the estate undisposed of.

If this construction prevails, the same must also apply to all devises, which, but for the act, would have been estates tail. The same construction must apply to the second, as to the first section of the act.

The children of Catharine take as purchasers under the act ; that cannot be disputed, and we insist they take an estate in fee, subject to the contingency on which it is to go down ; something like a condition subsequent, of living until the death of the mother.

Cited and commented on *Den* v. *Allaire, Spenc.* 6, and *Dingley* v. *Dingley*, 5 *Mass.* 537.

2. Suppose we are wrong, and the children have merely a contingent interest; a contingent remainder is an estate known in the law, an interest which one hath in lands, &c. Estates are divided into estates in possession, reversion, and *remainder*. Maria, as well as her brother, had an estate in lands, and she made a conveyance of an estate which she then held, not of an after acquired estate. She did not attempt to convey a mere possibility or expectancy, as in case of a son during the lifetime of the father, in which case nobody ever dreamed the son would be estopped. I do not argue for such a case. Maria conveyed her interest or estate; she survived her mother; her interest then became absolute, and enured to us, and vested for our benefit. I take it, an estoppel depends upon whether any estate existed in the grantor; which is not the case where the interest is merely speculative, as in the case of a son during the life of his father.

The counsel cited, and commented on the cases already referred to.

The conveyances profess to carry all the title which the grantors then had or which they might have, and this is tantamount to an assertion of title. It would sanction a fraud to permit them now to deny that they had title.

But it is said that Mrs. Hopper was a married woman, and cannot be estopped. This is putting the doctrine of estoppel on the technical ground of warranty. It is true a married woman cannot bind herself by covenants of warranty, but estoppel rests on broader grounds. Under our statute, a wife can convey as firmly as her husband; but title passes, and she shall not deny that she had title.

THE CHANCELLOR. Johannes Perry died in 1832, leaving a will, by which, after other devises, he devised as follows: "I give unto my daughter Catharine for and during her life, the remainder of my real estate; after her death, I will and require the same shall be equally divided among her heirs, and be unto them, their heirs and assigns, for ever."

At the death of the testator, Catharine had a daughter, Maria, her only child by her husband, Michael Salyer, the said Maria being then married to Lewis Hopper.

After the death of the testator, and in the lifetime of Catharine, Lewis Hopper and the said Maria his wife, by deed, duly acknowledged, conveyed to Peter Bush, his heirs and assigns, all the right, title, and interest which they then had, or thereafter might have, by virtue of the said will, in the premises in question.

Maria survived Catharine, and afterwards died, leaving six children. The question is, whether these children can recover the property from the said grantee of Maria and her husband.

The foregoing statement is sufficient to raise all the questions involved in the case.

I am of opinion that the estate which Maria had before Catharine's death was an alienable estate. By the provisions of our statute, excluding the last clause, " and if any child be dead, the part which would have come to him or her shall go to his or her issue in like manner," Maria had, while Catharine lived, a vested remainder. And if this last clause can be considered as doing any thing more than declaring what would be the result in case the person in whom the remainder was vested had not conveyed it, and had died leaving children ; if it can be considered as legislating an additional limitation to the estate ; my opinion is, that it is a limitation by way of executory devise. If it is an executory devise, then the person to whom Maria, in Catharine's lifetime, conveyed took subject to be defeated of her estate by the happening of the contingency on which the executory devise was to take effect. But this event did not happen, Maria survived Catharine. On the death of Catharine, the remainder was executed in possession. If Maria had not conveyed, it would have been executed in possession in her. She having conveyed, it was executed in the person who represented her, that is, her grantee.

There can be no doubt that, by the word " heirs," first used in this will, the testator meant *children*. Substituting the word *children*, this will give a life estate to Catharine, with a vested remainder in fee to her children or child.

The artificial construction adopted by the English judges in the *Shelley* case, was a clear violation of the intention of the testator. Our legislature have repudiated that construction by the statute; and the results of such a will, as declared by the statute, are just the results which the substitution of the word *children*, instead of the word *heirs*, produces, that is to say, a life estate with a vested remainder over in fee to the children. Of course, if one of the children die leaving issue, and without having aliened, his interest will go to his issue. And this, I apprehend, is all the statute means. It is certainly all the testator meant; and we should hardly suppose that the legislature, in a statute made for the purpose of carrying out the intention of the testator, would make a different will, by adding a limitation which would defeat the intention.

The courts in England, to avoid a contingent remainder and its consequences, felt bound to say, against the clear intention of such a will, that it gave a fee to the person therein named as devisee for life. If prohibited from such construction, they would certainly, to avoid the same consequences and to carry out the clear intention, have construed the word *heirs* to mean *children*, and have said that such a will gives an estate for life with a vested remainder in fee. And it cannot be doubted that courts under our institutions would have done the same, if our legislature had simply declared that such a will should not give a fee to the person therein named as devisee for life.

Now the object of our statute was to restore to such a will the construction demanded by the intention. And it is admitted by the Supreme Court that, without the last clause in the statute, the estate of the children or child is a vested remainder. A vested remainder is descendible. Has the statute, by simply declaring a result of this principle, as applied to the case, undone its intended work, and converted the estate, after all, into a contingent remainder, and defeated at once the intention of the testator and its own purpose? I think not. But, as before observed, if we are at liberty to consider this last clause as an additional limitation, it appears to me it should be held to be a limitation in the nature of an executory devise.

The case presents another question: Maria survived the

devisee for life; the remainder became thereby executed in possession; could she, against her said deed, maintain eject-ment for the lands? In the view I have taken of the case, it is not necessary for me to go into an examination of this ques-tion, or to express a decided opinion upon it; but I am strongly inclined to think she could not. I concur in the reversal of the judgment.

Judges WALL, SINNICKSON, and McCARTER concurred with the Chancellor.

CARPENTER, J., (dissenting). Johannes Perry, who died in the year 1832, by his last will devised as follows: "I give unto my daughter Catharine, for and during her life, the re-mainder of my estate; after her death, I will and require the same shall be equally divided among her heirs, and be unto them, their heirs and assigns, for ever." Catharine Salyer, the daughter, at the time of her decease, in 1845, left three chil-dren, found by the special verdict to be her lawful heirs. The lessors of the plaintiff, the children and grandchildren of Catha-rine, claim under this devise. The defendants claim two shares, out of three, in the premises in question, under deeds of bar-gain and sale and release without covenants of warranty, given by two of the children of Catharine during the lifetime of their mother; one of those children being a married woman, and having executed the conveyance in connection with her hus-band, according to the form prescribed by the statute. The first question is, what interest did the children of Catharine take under the will of their grandfather during the lifetime of their mother. If they took a vested remainder in fee, which they could alien or otherwise dispose of during her life, then there is an end of the case, and the lessors of the plaintiff can-not recover. If otherwise, and during her life, their interest was merely contingent; then another question will be presented.

It is too obvious to need additional remark, that at common law, under the rule in *Shelley's case*, Catharine Salyer would take by this devise a fee simple in the premises. But the de-vise is controlled by the first section of the act of 1820 (*Rev. L.* 774), which enacts, "That in case any lands, &c., shall be

devised to any person for life, and, at the death of the person to whom the same shall be so devised for life, to go to his or her heirs, &c., then and in such case, after the death of such devisee for life, the said lands, &c., shall go to and be vested in the children of such devisee, equally to be divided between them as tenants in common in fee, but if there be only one child, then to that one in fee; and if any child be dead, the part which would have come to him or her shall go to his or her issue, in like manner."

The devise is to be construed by the aid of the statute. The statute directs to whom the estate shall go, in cases within its terms, when the tenant for life shall die leaving issue. It is not now necessary to consider what will be the result in cases when the tenant for life shall die without issue. The suggestion may be offered, that possibly in such case, the statute not applying, the rule in *Shelley's case* may operate, and the estate descend to the heirs-at-law of the first taker. This view, it seems to me, must be adopted, or a reversion must remain in the heirs-at-law of the testator. Even under the construction adopted by the majority of the court, the remainder must be contingent until the tenant for life shall have a child in whom that remainder may vest. However this may be, the tenant for life left issue, and, in my judgment, the effect of the statute is to make those words in the will, which at common law are words of limitation, words of purchase. The statute gives to the word *heirs* the effect of the word *children*. Did the case then rest upon the first clause of the statute, as applied to the words of the will, the children of Catharine living at the time of the death of the testator would take a vested remainder, subject to open for the benefit of afterborn children.

Undoubtedly courts incline to construe remainders vested, rather than contingent, and it is not the uncertainty of ever taking effect in possession that makes a remainder contingent. To that every remainder for life and in tail must be liable, as the remainder man may die, or die without issue, before the death of the tenant for life. The present capacity of taking effect in possession, if the possession were to become vested, that an estate is always ready, from its commencement to its

end, to come into possession the moment the prior estate happens to determine, characterizes a vested remainder. 4 *Kent* 202; *Fearne* 216; *Williams on Real Property* 191 (*Lond.* 1845). This devise, then, were it controlled only by the first clause of this statute, would have been a vested remainder; though had there been no children at the time of the testator the remainder would have been contingent until the birth of the first child, when it would have vested, subject to open and let in those who might be born afterward. *Right* v. *Creber*, 5 *B. & C.* 866; *Doe* v. *Perryn*, 3 *T. R.* 484.

The succeeding clause of the statute, however, enacts, "that if any child be dead, the part which would have come to him or her shall go to his or her issue in like manner." As stated in the opinion delivered below, the whole provision of the section, taken together, is this: after the death of the devisee for life the lands shall go to, and be vested in his children; and if any child die in the lifetime of the tenant for life, the share of such child shall go to his children. The devise in the will of Johannes Perry, construed by the statute, is tantamount to a devise to Catharine for life, and on her death to her children, in case they survive her; and if any child shall die in the lifetime of the tenant for life, the share of such child shall go to his or her children. Under such a devise, the remainder to the children is clearly contingent upon their surviving the tenant for life, and cannot vest until her death.

It was suggested, by the counsel of the defendants, that the children of Catharine Salyer, at the death of the testator, took a vested interest by way of executory limitation, defeasible in case of their dying before her. I suppose such idea of an executory devise to be entirely without precedent or authority; it is certainly unsupported by any case cited before the court. The cases cited are of executory devises of a fee limited on a fee, and the like, to take effect upon a definite failure of issue in the first taker. The first taker in such case has a defeasible fee. But there is no such case here. Besides, it is a rule that no limitation will be allowed to operate by way of executory devise which consistently with the language used and with the intention can operate as a remainder. Hence the observation

of Mr Fearne : whenever a future interest is so limited by de-
vise as to fall within the rules laid down for the limitation of
contingent remainders, such interest is not an executory devise,
but a contingent remainder. *Fearne* 299. Lord Kenyon said,
in *Doe* v. *Morgan*, (1 *T. R.* 755), that if there ever existed a
rule respecting executory devises, which has uniformly pre-
vailed without any exception to the contrary, it is that which
was laid down by Lord Holt, in *Purefroy* v. *Rogers*, that
" where a contingency is limited to depend on an estate of free-
hold, which is capable of supporting a remainder, it shall never
be construed to be an executory devise, but a contingent remain-
der only, and not otherwise." The same rule was stated by
Bailey, J., in *Doe* v. *Selby*, 2 *B. & C.* 926. See, also, 2 *Prest.*
*Abst.* 117, 153.

I think it to be clear that in this disposition to Catharine for
life, and on her death to her children, and if any child die in
the lifetime of Catharine leaving issue, then over to such issue,
the limitations over may take effect by way of contingent re-
mainder. There is a particular estate of freehold, the estate for
life to Catharine, to precede and support the contingent remain-
ders. The contingency upon which the estate over is to vest
must happen immediately upon the termination of the estate for
life. It is so limited as to await the actual termination of the
particular estate, and not to take effect upon any event which
might prematurely determine it. These are the rules which
control and sustain contingent remainders, and this case is within
those rules. 2 *Prest. Abst.* 113; 4 *Kent* 248.

The remainder has a double aspect. It is first to such child
of Catharine as shall survive her, which was held by Chief
Justice Hornblower, in *Den* v. *English*, to be a contingent re-
mainder; and if any die before that period leaving issue, then
over to such issue. In *Doe* v. *Hopkinson*, 5 *Q. B.* 230, one
moiety was given to T., during his natural life, and after his
decease to such child or children *as he should happen to leave:*
it was said by Lord Denman, who delivered the judgment of
the court, that if the will had stopped with the devise above
stated, it would have been impossible to resist the clear effect
of the words. Nothing then could have vested till, at least, the

decease of T. But in that case, looking to the whole will, there were other words which showed the intention of the testator that the remainder should vest, upon which the court placed its judgment. So in *Festing* v. *Allen*, 12 *M. & W.* 279, 298, where the words were to A. for life, and on her death to such child of A. as should attain the age of twenty-one, and for want of such over, the devise was held a contingent remainder in children of A. So *Goodright* v. *Dunham*, *Doug.* 251.

Numerous cases might be cited to the same effect; but it is certainly unnecessary to multiply such citations, as, upon the view I take of the operation of the statute, I think it clear that the children of Catharine, on the death of the testator, took a contingent interest only in the premises devised, which did not vest until the death of their mother. It seems to me such result cannot be avoided without overturning, or rather disregarding, well settled rules of law, unless some other view is taken of the meaning or operation of the statute. Perhaps I do not properly apprehend the view of that portion of the court who hold that the children of Catharine take, under the devise in question as controlled by the statute, a vested remainder in fee. I understand, however, the view to be, that the first clause in the statute gives a vested interest, and that the subsequent clause is merely directory to regulate the descent in case any child should die in the lifetime of the tenant for life. This, I think, is to nullify that clause of the statute, to render it entirely nugatory. If the clause were stricken from the statute, the descent in the case supposed would not be otherwise. On the other hand, if the estate in remainder be vested, it may not only be aliened, and taken in execution during the lifetime of the tenant for life, but it may be devised, and the remainder over to the issue thus defeated, in direct contravention of the statute. Such construction seems to me to be in direct opposition to a clear and positive provision in the statute susceptible of a consistent exposition, and it is one in which I cannot concur. It is utterly to disregard that clause of the statute which provides, that upon the death of any child, leaving issue, his share shall go to his issue.

Under the view I take of the devise, as controlled by the

statute, it becomes necessary to inquire as to effect of the conveyances during the lifetime of the mother, before the contingency upon which the estate was to vest had happened. The court below was mistaken as to the time of the conveyance by John Bush, which was in fact made by him after he came of age, but prior to the death of his mother. It becomes, then, necessary to inquire, whether a deed of bargain and sale without warranty or recital of title will estop the grantor or bar him, and those claiming under him, from setting up a title adverse to his own grant.

I suppose it to be clear, upon the authorities cited by the counsel of the plaintiff, that, at common law, there can be no estoppel upon a conveyance by grant, unless there are covenants of warranty or an express recital of title. A deed of release, bargain and sale, or other deed taking effect under the statute of uses, passes no estate, except what is vested in the grantor at the time of the conveyance. Thus *Littleton* (§ 446) says: "Also these words, which are constantly put in such releases, sc. *quæ quovismodo in futurum habere potero*, are void in law; for no right passeth by a release, but the right which the releasor hath at the time of the release made." Lord Coke, in his comment on this section, says, that if there be a warranty annexed to the release, it will rebut and bar a future right. *Co. Lit.* 265 a. So stands the doctrine to this day. A mere release of a possibility or contingent interest to a party not privy in estate will certainly pass no legal interest. What is here said of a release will apply to a deed of bargain and sale, or other conveyance, taking effect under the statute of uses. These conveyances cannot pass an estate, either when the grantor has nothing at the time of the sale, or an interest merely contingent. There is in such case no seizin to give effect to the statute, so that the deed operates only as a common law grant, which can never pass an estate unless it be vested in interest. 2 *Smith's L. Cas.* 455, note by Mr. Hare, (*Phil. ed.* 1844).

There is nothing in the distinction, attempted to be raised in the application of the doctrine, between contingent interests and mere expectancies. Indeed, a contingent interest is not,

strictly speaking, to be called an estate; it is merely the chance of having one. There may be a contingent interest, says Mr. Preston, but no interest, except such as is vested, can be accurately termed an estate. 2 *Prest. Abst.* 92. It might have been extinguished by feoffment, fine, or common recovery, but it cannot be conveyed at law by conveyance to take effect under the rules of the common law. The effect of a conveyance under the statute of uses upon such interest, if any, must be to bind the grantor, or those claiming under him, by way of estoppel.

An estoppel is said, by Lord Coke, to be when a man is concluded by his own act or acceptance to say the truth, a definition rather startling; as if truth was the enemy which the law of estoppel was invented to exclude, while its real object is to repress fraud and to render men truthful in their dealings with each other. Rightly understood and properly applied it is a valuable auxiliary in the hands of justice for the best purposes. A better definition has been given by some old authorities: "An estoppel is where a man is concluded and forbidden by law to speak against his own act ordered; yea, even though it is to say the truth." *Termes de la Ley, tit. Estoppel;* 1 *Lit. Pr. Reg.* cited in *Best on Evidence,* § 362, *p.* 403. It is an admission, or something which the law treats as equivalent to an admission, of an extremely high and conclusive nature; so high and conclusive that the party whom it affects is not permitted to aver against it, or to offer evidence against it, or to offer evidence to controvert it. The principle, as applied to duty, is, that where a man has entered into a solemn engagement under his hand and seal, as to certain facts, he shall not be permitted to deny any matter which he has so asserted. 2 *Smith's L. Cas.* \*437, \*456 (430, 450, *Phil. edition*). In *Goodtitle* v. *Bailey, Cowp.* 600, Lord Mansfield said: " If a man has made a solemn deed *covenanting* that another shall enjoy the premises, and likewise for further assurance, it shall never lie in his mouth to dispute the title of the party to whom has so undertaken, no more than it shall be permitted to a mortgagor to dispute the title of his mortgagee. No man shall be allowed to dispute his own solemn deed." The *dictum* as

applied to the case then before the court, is unquestionably sound; though separated from the context, it has been· used as a text to introduce or support an untenable doctrine. The doctrine of estoppel was properly applied to the case then under consideration. But, as conveyances which take effect under the statute of uses only pass such interest as the grantor has at the time, it can only apply when by covenants or recital of title the grantor can be concluded by his solemn admission of title. Thus, in *Bensley* v. *Burdon*, 2 *Sim. & Stuart* 519, cited on the argument, after a recital of title, the grantor conveyed by deeds of lease and release, and it was held that, having afterwards acquired an interest in the estate, he was estopped, in respect of the solemnity of the instrument, as against the other party to the indenture, to aver or insist that he had not such interest at the time of its execution.

But it is unnecessary to recur to all the cases cited. I take it that there can be no question as to the general doctrine, that, by our present modes of conveyance, estoppels can only arise by recital or covenant of title. The only doubt can be whether the rule has been shaken in this state by previous adjudication, so as to conclude us on this inquiry. I am of the opinion that there have been no decisions which should restrain us from setting the doctrine on its true foundations.

There are two cases only in this state, and in neither was the point necessary for the decision of the cause. *Den* v. *Winans*, 1 *Green* 1, was the case of ejectment by a purchaser at sheriff's sale against a defendant in execution; and it was properly held that he could not set up an outstanding title in a third person to defeat the plaintiff, such third person not having appeared and made himself a defendant, or in any way asserted his rights. It was very unnecessarily said in this case, that no man can recover in ejectment or defend himself against his own deed. The true principle seems to be this, that a purchaser of land at sheriff's sale takes the title and privileges of the execution debtor, and such debtor shall not be permitted to defeat the purchaser's recovery of his possession by setting up a title in some third person, or alleging that he had no title at the time of the sale. This rule is said to be

founded (not on the doctrine of technical estoppel), but in justice and sound policy. The rule was carried farther in a case somewhat similar. The defendant being in possession when lands were levied on and sold, it was said that the plaintiff was entitled to possession under his deed, and the defendant ought to be put to a new action for the trial of his title. *Lessee of Culbertson* v. *Martin*, 2 *Yeates* 443. The case of the *Lessee of Cooper* v. *Galbraith*, 3 *Wash.* 546, which was cited, was in Pennsylvania; but the point of that case goes no farther than that of *Den* v. *Winans*, and the same remarks apply. Some of the *dicta*, it is true, seem very broad, but, when the language of Justice Washington is critically examined, I think there is much to induce us to suppose that he intended to apply it only to the case then before the court. In an action by the purchaser at sheriff's sale to recover the possession of land against the execution debtor, he would not permit such debtor to set up a defect in his own title at the time of the sale. If the case went farther I should be very unwilling to follow it. I should regard a rule, that a defendant, whose title conveyed by the sheriff may be merely possessory, must not only surrender the possession, but be estopped from setting up any after acquired and better title, as exceedingly unjust and of the most dangerous tendency.

The only other case in this state is that of *Den* v. *Van Ness*, 5 *Halst.* 102. This was the case of a mortgage, and the decision was unquestionably right, but there were some unnecessary *dicta* as to the effect of a mere grant. It is well established that a mortgagor cannot dispute the title and invalidate the security pledged for the payment of the mortgage debt; but such is the rule without reference to the doctrine of technical estoppel. By what may properly be called an equitable estoppel, based upon the legal fraud which would otherwise be permitted, one who mortgages land as his own, upon suit brought against him, shall not be permitted to derogate from his own mortgage by denying the title or by setting up a title in any third person. See *Den* v. *Gardner*, *Spencer* 556, and cases cited. It was unnecessary, then, in that case to go farther, and what was said as to the effect of a mere grant is not entitled to the

weight of an adjudged principle. What was so said is not sup-
ported by the authorities cited, unless perhaps the two cases cited
from New York, since, however, overruled or disregarded in that
state. The authorities cited from Coke's Reports, Plowden, and
Coke Littleton were upon leases, and do not apply. In leases
for years the law will imply a covenant upon the word "demise"
and other words of grant, but it is otherwise in conveyances in
fee. *Cooper* v. *Galbraith*, 3 *Wash.* 546, there cited, has already
been referred to. *Den* v. *Brewer*, *Coxe* 172, was the case of a
mortgage, and it was held that the defendant, who was the mort-
gagor, was bound by the *recital* in his own mortgage deed. The
principle, even there, seems to have been misapplied, for it does
not appear that the lessor of the plaintiff claimed under that deed.
The case was a mere *nisi prius* decision, and, like many others
collected in that volume, entitled to very little weight.

I hold, then, that in this case there was no estoppel; that
neither John Bush nor the heirs of Maria Hopper are estopped
from setting up the interest which vested subsequently to the
respective conveyances, there being no recital of title or cove-
nant of warranty. In regard to the deed of ·Maria Hopper, I
fully adopt the further conclusion of the court below : a married
woman, whose conveyance derives its effect entirely from the
statute, would not be bound even by express covenants or recital
of title. I can add nothing to the clear exposition of the law
on this point, there given.

There was no actual seizin by Maria Hopper, and, as the law
has always been held in this state, her husband never became en-
titled to curtesy. She never had either actual or constructive
possession of the premises. The defendants, therefore, have ac-
quired no rights under his deed.

The result, under the view taken by me, would be, that the
plaintiff below should have judgment for the entire premises,
while he obtained judgment but for two-thirds. Were this the
opinion of the court, there would be no difficulty in rectifying
such error, although the writ was brought by the defendants be-
low. The record is now in this court, and we can here give such
judgment as the court below should have given. It was so

held in *Garr* v. *Stokes* 1 *Har.* 404, where, upon error by the defendant below, the judgment was reversed, and a new judgment given against the plaintiff in error, without costs in error.

Judges PORTER and SCHENCK concurred in the opinion delivered by CARPENTER, J.

The CHANCELLOR and Judges WALL, SINNICKSON, and McCARTER voted to reverse the judgment below. (*a*).

The judgment below was reversed, and judgment was ordered for the plaintiff below for an undivided third of the premises, being the third devised by Rachael Wortendike.

CITED *in Morehouse* v. *Cotheal*, 2 *Zab.* 437 ; *Ross* v. *Adams*, 4 *Dutch.* 179 ; *Howe* v. *Harrington*, 3 *C. E. Gr.* 495 ; *In re Heaton*, 6 *C. E. Gr.* 224 ; *Zabriskie* v. *Wood*, 8 *C. E. Gr.* 551.

(*a*) This is one of those cases in which, by the peculiar constitution of the Court of Errors, four judges being the majority of a bare quorum, may reverse a decision against the opinions of six other judges of the same court when three of the latter are constitutionally incapable of voting in the Court of Errors, from the fact of having given their opinion in the court below ; from which it may occur, as in this case, that an actual minority, happening to be a constitutional majority, may decide a bare *legal* question contrary to the opinions of all the law judges hearing the cause.